

### *Status Report*
### *In Re Andrew Stephen Hennigan[1]*

### *Available Estate Funds*

1. Following the partial return of the retainer from Weintraub & Selth, P.C., former counsel of the chapter 11 estate, the Debtor deposited an amount of $6,531.81 into the Wells Fargo DIP checking account.[2]

2. At his discretion, Mr. Weintraub retained a hold-back of $3,500 in contemplation of fees related to the filing of the final fee order, the remainder of which to be returned to the estate.

3. In March, the Debtor informed former bankruptcy counsel that he had discovered an existing retirement account with the Los Angeles City Employee Retirement System ("LACERS"). As of the date of this report, the balance in the account is $8,457.95.[3] The Debtor has filed paperwork with LACERS requesting the liquidation of the account, the proceeds of which the Debtor will deposit into the DIP checking account upon receipt.

### *Liquidation of Legal Claims*

4. The Debtor continues to make substantial progress on the development of the his various claims against his employer, Paul Hastings. These claims include, among other things, wrongful discharge, discrimination under FEHA, and defamation.

5. As this court may recall, the chapter 11 estate holds claims pursuant to Title 18 U.S.C. §§ 1962(c), (d) and 1964(a) resulting from the Debtor's unlawful discharge for discovering a senior partner at Paul Hastings, James Bliss, deliberately omitted controlling authority in the Title III and Title VI debt readjustment proceedings of the Commonwealth of Puerto Rico and its various instrumentalities.

6. In April 2019, the debtor learned of various allegations made against McKinsey & Company ("McKinsey") relating to false declarations made in various Title 11 proceedings concerning deliberate efforts to conceal conflicts of interest. Notably, in February 2019, the U.S. Trustee's Office and McKinsey entered into $15 million settlement relating to McKinsey's numerous failures to disclose its conflicts of interest pursuant to Bankruptcy Rule 2019 disclosures in three separate bankruptcies.[4]

---

[1] Case No. 2:18-21885 (BB).

[2] *See* Wells Fargo Checking Account Statement for July 2019 (*attached*).

[3] *See* LACERS Account Profile (accessed on August 2, 2019) (*attached*).

[4] *See* Mary Williams Walsh, *McKinsey Will Return $15 Million in Fees Over Disclosure Failures*, NYTimes Online (February 19, 2019) (last accessed on August, 2, 2019) (*attached*) (*available at* https://www.nytimes.com/2019/02/19/business/mckinsey-bankruptcy-settlement.html).

7. Based on (i) filings publicly available on bankruptcy dockets and (ii) evidence that the Debtor personallu possesses, the Debtor has determined that the estate holds valuable claims against McKinsey, several law firms, auditing firms, and banks that, among other things, have committed securities fraud[5] and filed numerous false claims and declarations in the Title III and Title VI debt adjustment proceedings of the Commonwealth of Puerto Rico and its various instrumentalities.

8. The Debtor is confident in his legal judgment concerning the RICO and Conspiracy to Commit RICO claims, as he has substantial experience working on them from his time as a judicial clerk in the Southern District of New York for the Honorable Robert D. Drain.

9. Unfortunately, the completion of the complaint has been impeded by the Debtor's need to respond to the U.S. Trustee's most recent motion to dismiss,[6] which contains various factual and legal assertions that are either false or misleading (discussed *below*).

10. The Debtor will file the complaint prior to the scheduled August 15, 2019 status conference hearing.

### *Pending U.S. Trustee's Motion to Dismiss*

11. As noted *above*, the completion of the complaint has been impeded by the Debtor's need to respond to the U.S. Trustee's most recent motion to dismiss, which, contains various factual and legal assertions that are either false or materially misleading.[7] For example, the motion to dismiss indicates that the Debtor in Possession had not filed Monthly Operating Reports "[s]ince filing," which is plainly untrue because as the docket reflects reports filed for October 2018 through April 2019.[8] In addition, the motion to dismiss represents that Debtor had not provided a copy of his Certificate of Good Standing from New York, when, in fact, he had submitted it to former bankruptcy counsel in March 2019.[9]

12. Furthermore, the U.S. Trustee's motion to dismiss makes some of the same legal arguments which the Debtor's original objection to the U.S. Trustee's initial motion to dismiss demonstrated have no legal merit.[10] For example, the U.S. Trustee again seeks

---

[5] RICO incorporates securities law and regulations, including those of the 1934 Exchange Act, through 18 U.S.C. § 1961(D). In turn, the Exchange Act incorporates rules promulgated by the Municipal Securities Rule Board (the "MSRB"). Therefore, violations of the securities act or the rules promulgated by the MSRB may serve as "predicate acts" under RICO and Conspiracy to Commit RICO.

[6] U.S. Trustee's Motion to Dismiss, Dkt. 69.

[7] *Id.*, at 3.

[8] *Id.*, at 3.

[9] See Emails Sent to U.S. Trustee, Mr. Kenneth G. Lau, among others (*attached*).

[10] *See e.g.*, Objection of Debtor in Possession to U.S. Trustee's Motion to Dismiss Chapter 11 Proceedings and Impose 180-day Ban, Dkt. 21.

to impose an 180-day ban under 11 U.S.C. § 109(g), even though the Debtor in Possession's previous objection sets forth caselaw clearly demonstrating that § 109(g) does <u>not</u> apply to first time filers.[11]

13. Starting on July 23, the Debtor has written Mr. Kenneth G. Lau of the U.S. Trustee's office several emails pointing out numerous deficiencies in the motion to dismiss and he has failed to personally respond.[12]

14. If the U.S. Trustee's Office fails to withdraw the motion to dismiss in the near future, the Debtor in Possession intends on filing a motion to impose sanctions on the U.S. Trustee's Office.

15. Again, having to respond to the error-riddled U.S. Trustee's motion to dismiss has served as a major distraction, causing unnecessary delay and distress.

**Weintraub & Selth's Unilateral Withdrawal**

16. In May, the Debtor informed Mr. Daniel Weintraub in an email exchange that, in his professional judgment, the Debtor believed that Mr. Weintraub had acted unethically in the performance of his duties as bankruptcy counsel.[13]

17. Mr. Weintraub then told the Debtor of his intention to withdraw as bankruptcy counsel based on a "breakdown in the attorney client-relationship."[14] The Debtor expressly rejected this contention.[15]

18. In response, the Debtor told Mr. Weintraub that such a course of action would be against the express wishes of the Debtor and, given the timing, was not in the best interests of the estate or its creditors.[16]

19. Mr. Weintraub filed a motion to withdraw on June 6, 2019[17] and this Court entered an order approving the motion on July 3, 2019.[18]

---

[11] *Id.* at 12-14.
[12] *See* Emails Sent to U.S. Trustee.
[13] *See* May 2019 Email Exchange with Dan Weintraub (*attached*).
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Dkt. 62.
[18] Dkt. 67.

**U.S. Trustee's Quarterly Fee**

20. The Debtor in Possession submitted the U.S. Trustee's fee for the most recent quarter on August 1, 2019.

Date: August 2, 2019

Andrew S. Hennigan
Debtor in Possession

# Wells Fargo Everyday Checking

July 31, 2019 ■ Page 1 of 4



ANDREW STEPHEN HENNIGAN
DEBTOR IN POSSESSION
CH11 CASE #18-21885 (CCA)
928 W HUNTINGTON DR APT 21
ARCADIA CA 91007-6515

## Questions?

Available by phone 24 hours a day, 7 days a week:
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS**  (1-800-869-3557)

TTY: 1-800-877-4833
En español: 1-877-727-2932
華語 1-800-288-2288  (6 am to 7 pm PT, M-F)

Online: wellsfargo.com

Write: Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR  97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.

| Online Banking | ☐ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☐ | Overdraft Protection | ☐ |
| Mobile Banking | ☐ | Debit Card | ☐ |
| My Spending Report | ☐ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 7/1 | $20.77 |
| Deposits/Additions | 6,531.81 |
| Withdrawals/Subtractions | - 386.27 |
| Ending balance on 7/31 | $6,166.31 |

Account number: ████3952

ANDREW STEPHEN HENNIGAN
DEBTOR IN POSSESSION
CH11 CASE #18-21885 (CCA)

California account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): ████████

**Overdraft Protection**

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 7/1 | | Paypal Transfer 190629 58K22Asjhd8Y6 Andrew Hennigan | | 10.00 | 10.77 |
| 7/29 | | Edeposit IN Branch/Store 07/27/19 02:37:06 Pm 1200 S Baldwin Ave Arcadia CA 3952 | 6,531.81 | | 6,542.58 |
| 7/30 | | Withdrawal Made In A Branch/Store | | 80.00 | 6,462.58 |
| 7/31 | < | Business to Business ACH Debit - Capital One Mobile Pmt 190730 921139800486496 Henniganandrew | | 60.00 | |
| 7/31 | | Paypal Inst Xfer 190731 1006241899081 Andrew Hennigan | | 226.27 | |
| 7/31 | | Monthly Service Fee | | 10.00 | 6,166.31 |
| Ending balance on 7/31 | | | | | 6,166.31 |
| Totals | | | $6,531.81 | $386.27 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

< Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.

### Summary of Overdraft and Returned Item fee(s)

| | Total this statement period | Total year-to-date † |
|---|---|---|
| Total Overdraft Fees | $0.00 | $35.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

† Year-to-date total reflects fees assessed or reversed since first full statement period of current calendar year.

### Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 07/01/2019 - 07/31/2019 | Standard monthly service fee $10.00 | You paid $10.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Minimum daily balance | $1,500.00 | $10.77 ☐ |
| Total amount of qualifying direct deposits | $500.00 | $0.00 ☐ |
| Total number of posted debit card purchases or posted debit card payments of bills in any combination | 10 | 0 ☐ |
| The fee is waived when the account is linked to a Wells Fargo Campus ATM or Campus Debit Card | | |

Monthly service fee discount(s) (applied when box is checked)
Age of primary account owner is 17 - 24 ($10.00 discount)   ☐
RC/RC

## ☑ IMPORTANT ACCOUNT INFORMATION

**Effective August 19, 2019, there will be changes to Service fees for Overdraft and Returned Items.**



We may assess an overdraft fee for any item we pay into overdraft, and we may assess a returned item fee for any item returned unpaid. We limit our overdraft and/or returned item fees to three (3) per business day. We will not assess an overdraft or Non-Sufficient Funds/NSF fee on items of $5 or less. If both your ending daily account balance and available balance are overdrawn by $5 or less after we have processed all of your transactions, we will not assess an overdraft fee on the items. No overdraft fee will be assessed on ATM and every day (one-time) debit card transactions unless Debit Card Overdraft Service is added to your account



## Worksheet to balance your account

Follow the steps below to reconcile your statement balance with your account register balance. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

**A** Enter the ending balance on this statement    $ _____

**B** List outstanding deposits and other credits to your account that do not appear on this statement. Enter the total in the column to the right.

| Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| **Total** | $ |

→ + $ _____

**C** Add **A** and **B** to calculate the subtotal    = $ _____

**D** List outstanding checks, withdrawals, and other debits to your account that do not appear on this statement. Enter the total in the column to the right.

| Number/Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | $ |

→ - $ _____

**E** Subtract **D** from **C** to calculate the adjusted ending balance. This amount should be the same as the current balance shown in your register    = $ _____

## General statement policies for Wells Fargo Bank

▪ To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts. You have the right to dispute the accuracy of information that Wells Fargo Bank, N.A. has furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

▪ In case of errors or questions about your electronic transfers, telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

©2010 Wells Fargo Bank, N.A. All rights reserved NMLSR ID 399801                    Member FDIC



**MyLACERS**
ACCOUNT SUMMARY

202 W. First Street
Suite S00
Los Angeles, CA 90012-4401
(800) 779-8328

Hi, ANDREW HENNIGAN  | Profile (../General/UserProfile.aspx)  | Submit Inquiry  | Sign Out

HENNIGAN, ANDREW STEPHEN (xxx-xx-0987)

**Current Status:**        Inactive           **Date of Birth:**         2/11/1985

## My Service

**Employment Service:** 2.91460

**Benefit Service:** 2.91460

View Service Detail (ServiceDetail.aspx)

## My Contributions

| Contribution Type | Pre Tax | Post Tax | Interest | Total |
|---|---|---|---|---|
| Survivor Contributions: | $589.54 | $0.00 | $115.07 | $704.61 |
| Regular: | $6,486.95 | $0.00 | $1,266.39 | $7,753.34 |
| Grand Total: | $7,076.49 | $0.00 | $1,381.46 | $8,457.95 |

*Disclaimer This is a summary of your LACERS account. If any information is incorrect, please contact LACERS at (800) 779-8328.*

©2007-2019, Levi, Ray & Shoup, Inc. All rights reserved.   Disclaimers (https://www.lrs.com/Disclaimers) |
Attributions (../LegalStatement.aspx) | Privacy (https://www.lrs.com/Privacy)

Version: 3.9.4.17.1
(http://www.lrsretirementsol

# McKinsey Will Return $15 Million in Fees Over Disclosure Failures

By <u>Mary Williams Walsh</u>   Feb. 19, 2019

McKinsey & Company agreed Tuesday to a $15 million settlement with the Justice Department to resolve an investigation into allegations that it did not make required disclosures of its financial connections with other parties while working on bankruptcies.

The settlement arose from complaints that McKinsey had held back information about its investments and other deals in three cases that have entangled the powerful consulting company in <u>a complicated court fight</u> with a retired corporate turnaround specialist. The specialist, Jay Alix, has accused McKinsey of improperly profiting off the reorganizations it worked on.

Cliff White, director of the Office of the United States Trustee Program, the unit of the Justice Department that oversees the bankruptcy court system, said McKinsey had "failed to satisfy its obligations under bankruptcy law and demonstrated a lack of candor."

He added, "If this conduct is repeated in future cases, we will seek even more far-reaching remedies."

## Subscribe to With Interest

**Catch up and prep for the week ahead with this newsletter of the most important business insights, delivered Sundays.**

The settlement would end the Justice Department's court-ordered

McKinsey Will... Case 2:19-bk-21885-BB... Disclosure Docu... - T... Filed 08/02/19   8/2/19, 11:08 AM

mediation with McKinsey over its work for three bankrupt companies: Alpha Natural Resources, Westmoreland Coal and SunEdison. The agreement requires approval by bankruptcy judges in Richmond, Va.; Houston; and New York City.

McKinsey was also in mediation with Mr. Alix, who formed a small investment company that bought some of the companies' unsecured debt as part of his efforts to expose what he has called improper conduct by McKinsey. The mediation was an unusual joint step ordered by three bankruptcy court judges intended to head off a full trial.

Mr. Alix said Tuesday that he and McKinsey had failed to reach an agreement and that he would press his claims in court, including that McKinsey improperly profited from stakes in bankrupt client companies held by its investment division, MIO Partners.

"This is not really the last stop on the train," he said of the mediated settlement with the Justice Department. "McKinsey today is not in compliance with the United States bankruptcy code in any of these cases, and they need to be held accountable."

Under the settlement, the department said it would no longer investigate McKinsey's disclosures in the 14 bankruptcies the firm has advised since it began advising insolvent clients in 2001. But it reserved the right to file new complaints if it gets new information that McKinsey has committed fraud or is not "disinterested," as required, in one or more of those cases.

A McKinsey spokeswoman said the firm had agreed to the settlement "in order to move forward and focus on serving its clients."

She said the settlement did not require McKinsey to admit that its disclosures were insufficient or noncompliant, and did "not in any way

McKinsey Will Pay $15 Million in Case Over Bankruptcy Disclosure Failures - The New York Times

constitute an admission of liability or misconduct by McKinsey or any of its employees, officers, directors or agents."

The company said it had already taken steps to change its disclosure practices in response to guidance from the Office of the United States Trustee.

Bankruptcy law requires all professionals working on a case to disclose business relationships so the courts and other parties can watch for improper arrangements or movement of assets of the distressed companies.

McKinsey has recently provided information on some connections, but only after considerable prodding and sometimes only in a private meeting with the judge, rather than in open court.

Mr. Alix has accused McKinsey of using those connections to earn much more than its court-approved fees: He has filed pleadings with the courts claiming that McKinsey earned an additional $22 million in SunEdison's bankruptcy through a complicated series of accounting manipulations. He has also accused McKinsey of improperly earning a $50 million profit by investing in Alpha's secured debt while serving as Alpha's adviser.

The settlement with the Justice Department does not cover those allegations, which were wider ranging than those brought by the Justice Department, and McKinsey has denied them.

Mr. Alix's mediation with McKinsey was handled by the same mediator who helped McKinsey and the Justice Department reach their settlement, Judge Marvin Isgur of the bankruptcy court in Houston.

The Justice Department said the $15 million from McKinsey was "one of the

highest repayments made by a bankruptcy professional for alleged noncompliance with disclosure rules." But the penalty is only about a third of the fees McKinsey has billed for while advising the three companies.

SunEdison, a builder of renewable energy projects, paid McKinsey $16 million for bankruptcy work. Alpha Natural Resources, a coal company, paid about $20 million. And Westmoreland Coal has billed about $6 million so far. Westmoreland's bankruptcy has not yet been settled, and McKinsey has not yet been approved to work on the case, much less been paid.

Each will get $5 million for distribution to their creditors, whose recoveries will be improved. In cases where McKinsey itself was a creditor, it will not receive any new distributions, the Justice Department said.

The settlement was comparatively small in the corporate world, but in the niche of corporate bankruptcies, it was unusually large, said Lynn M. LoPucki, a law professor at the University of California, Los Angeles, who runs a bankruptcy database that includes fees and fee reductions.

"This is a different environment," he said. "In this environment, they don't take money away from the professionals."

Are GSA's IG recommendations to cancel McKinsey's schedule contracts too harsh? - Federal News Network    8/2/19, 9:50 AM



(https://federalnewsnetwork.com)

Pay/Benefits
(https://federalnewsnetwork.com/category/pay-benefits/)

Causey
(https://federalnewsnetwork.com/category/mike-causey-federal-report/)

Workf
(https://federalnewsnetwork

(https://federalnewsnetwork.com) > Reporter's Notebook (https://federalnewsnetwork.com/category/reporters-notebook/) > Reporter's Notebook
(https://federalnewsnetwork.com/category/reporters-notebook/reporters-notebook-jason-miller/) > ...

# Are GSA's IG recommendations to cancel McKinsey's schedule contracts too harsh?



**By Jason Miller (https://federalnewsnetwork.com/author/jason-miller/)** | @jmillerWFED (https://twitter.com/jmillerWFED)

July 29, 2019 11:33 am    4 min read

**36 Shares**

The General Services Administration's inspector general came down hard on McKinsey and Company in a recent audit. It recommended that the Federal Acquisition Service cancel McKinsey's IT and professional support services schedule contracts.

That's right, FAS should just pull the plug and tell McKinsey to start over.

"McKinsey refused to provide the records required to complete the pre-award audit; therefore, the audit report advised the contracting officer to obtain the necessary information or cancel the contract. However, instead of addressing the contractor's lack of cooperation during the pre-award audit, a Federal Acquisition Service (FAS) division director (Division Director) removed the contracting officer from the contract negotiations and awarded the contract pricing with rates that were at least 10 percent higher than those originally proposed," the July 23 IG report (https://www.gsaig.gov/sites/default/files/audit-reports/A170118_1.pdf) states.

**Figure 1 – Awarded Contract Pricing**

| Team | Full-Time Team Makeup (includes undefined part-time leadership and staff) | Original Proposed Weekly Rate | Weekly Rate Awarded | % Above Existing Rate | Annualized Rate |
|------|-----------------------------------------------------------------------|-------------------------------|---------------------|-----------------------|-----------------|
| A | Engagement Manager, 1 Associate Or Business Analyst (BA) | $120,186 | $133,196 | 11% | $6,926,192 |
| B | Engagement Manager, 2 Associates/BAs | $151,539 | $167,943 | 11% | $8,733,036 |
| C | Engagement Manager, 3 Associates/BAs | $181,805 | $201,485 | 11% | $10,477,220 |
| D | Engagement Manager, 4 Associates/BAs | Not Proposed | $217,801 | N/A | $11,325,652 |
| E | 1 Associate/BA | $51,442 | $56,707 | 10% | $2,948,764 |

Source: July 23 report from GSA's inspector general.

The problems with the schedule contracts may be more about GSA and less about McKinsey, but the recommendation to just cancel schedule contracts is stunning. Several industry observers say they can't remember a time that a vendor wasn't suspended or debarred that auditors came down hard (https://federalnewsnetwork.com/technology-main/2012/04/gsa-cancels-one-of-oracles-it-schedule-contracts/) on a contractor.

"It is not a common recommendation," said Trey Hodgkins, CEO of Hodgkins Consulting and a former senior vice president of IT Alliance for Public Sector. "Usually the IG tells the agency to take some other remedial action. The question that I have is, what's going with division director GSA?"

-------- **Your opinion matters. Take Market Connections' survey about how you consume media.**

Are GSA's IG recommendations to cancel McKinsey's schedule contracts too harsh? - Federal News Network

(https://www.surveygizmo.com/s3/5062279/41-survey)

Another good question because the IG just made far less punitive recommendations for the division director, who seemed to be the real wrongdoer here.

The auditor suggested GSA decide whether the division director should be involved in future negotiations with McKinsey — seems like an obvious bad idea — and add more controls to ensure contracting officers remain independent and take appropriate actions to address the Washington Branch chief's actions. Again what those actions are unclear.

If you look at FAS Commissioner Alan Thomas's response to the audit, it's among the most detailed you will see in these reports.

"FAS will immediately pursue a bilateral contract modification to prevent placement of new orders while FAS attempts to negotiate better pricing," FAS stated. "FAS strongly considered the OIG's recommendation to cancel the contract, however, we decided to pursue the bilateral contract negotiation and better pricing for three reasons: first, it protects taxpayers by immediately stopping any new work under the contract; second, it allows agencies to continue to perform mission critical work; and third, it affords the OIG the opportunity to negotiate better pricing with a contractor that works with agencies across the government."

Thomas said if McKinsey does not accept bilateral contract modification or renegotiation, then GSA will cancel the contracts.

Thomas said cancelling the contract immediately doesn't give them any of these benefits and could hurt agency missions. GSA also is bringing in a new contracting staff to handle the renegotiations and the division director is no longer working for GSA.

------    **Keep up with the latest commentary and interviews from Tom Temin and the Federal Drive by subscribing to our newsletters.**

(https://federalnewsnetwork.com/email-alerts/)

McKinsey didn't have much to say about the IG's audit or recommendations.

"We have received the OIG's report and are in discussions with GSA," a company spokesman said in a statement to Federal News Network.

"I do think GSA had reasonable solution for the problem," Hodgkins said.

## Commercial vs. government practices

Several federal procurement experts questioned whether auditors are considering the way McKinsey and other similar companies sell services in the commercial sector (https://federalnewsnetwork.com/reporters-notebook-jason-miller/2018/09/how-gsas-customers-are-driving-schedule-modernization-efforts/) when performing the oversight.

Christoph Mlinarchik, a government contracts expert and owner of ChristophLLC.com (http://ChristophLLC.com), said it's clear agencies are trying to juggle the conflicting priorities of keeping prices down (https://federalnewsnetwork.com/acquisition/2018/11/long-overdue-reforms-coming-to-gsas-schedule-program/) and adhering to commercial practices.

"Due to McKinsey's sterling reputation, it commands higher prices — that's the reality of the consulting market. If McKinsey uses a weekly team rate instead of individual hourly rates, there are many federal clients who will pay the premium and play ball with flexible contract structure to secure a top-tier consulting firm like McKinsey," he said. "After this IG report, maybe it just won't be in the form of a GSA Schedule contract order."

Mlinarchik said the report also highlights other challenges GSA, and many other agencies, face daily — speed vs. price.

"In this case, the IG scolded GSA for focusing on timeliness and productivity (awarding contracts quickly) rather than pricing. I can tell you that many contracting shops favor speed and quantity rather than quality. They call this 'customer service,' which makes you question the identity of the customer," he said. "Is the customer the government program office or the taxpayer footing the bill?"

GSA also said it's reviewing all team-based pricing across the schedules program by the Office of Governmentwide Policy's Procurement Management Review team, meaning it's considered an independent review.

*Copyright © 2019 Federal News Network. All rights reserved. This website is not intended for users located within the European Economic Area.*

---

**(https://federalnewsnetwork.com/author/jason-miller/)**
Jason Miller (https://federalnewsnetwork.com/author/jason-miller/)

Jason Miller is executive editor of Federal News Network and directs news coverage on the people, policy and programs of the federal government. Follow @jmillerWFED (https://twitter.com/jmillerWFED)

**From:** **Andrew Hennigan** andrewshennigan@gmail.com 
**Subject:** Critical Issues Concerning the Pending UST Motion to Dismiss
**Date:** July 23, 2019 at 10:48 PM
**To:** kenneth.g.lau@usdoj.gov
**Cc:** clifford.j.white@usdoj.com, ron.maroko@usdoj.gov, opr.complaints@usdoj.gov, corey.r.amundson@usdoj.com,
judge_lane@nysb.uscourts.gov, Dawn Giel dawn.giel@nbcuni.com, Picker, Leslie (NBCUniversal) leslie.picker@nbcuni.com,
Kolodny, Lora (NBCUniversal) lora.kolodny@nbcuni.com



Mr. Kenneth G. Lau,

Today, I was reviewing the docket and discovered the motion to dismiss that bears your signature on behalf of the Office of the United States Trustee. *See In re Andrew Stephen Hennigan*, Case No. 2:18-21885-BB, Dkt. 69 (Bankr. C.D. Cal) (filed on 7.22.19).

First, allow me to express my disappointment that you choose not to attempt to contact me by phone or email first before resorting to filing a motion to dismiss my case and impose an 180-day ban on filing. Regrettably, much of what you cite as "fact" and is incorrect or misleading without more. If you or your office had contacted me via email or phone in advance, perhaps the UST office could have avoided filing false or misleading information with the bankruptcy court.

As you are aware, Bankruptcy Rule 9011 ("Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers"), subsection (b) provides

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, <u>formed after an inquiry reasonable under the circumstances,</u>—

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(emphasis added). In addition, California Rule 3.3 of Professional Ethics relevantly provides

> (a)  A lawyer shall not:

>> (1)  knowingly make a false statement of fact or law to a tribunal* or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

>> (2)  fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel, or knowingly* misquote to a tribunal* the language of a book, statute, decision or other authority; or

(3)  offer evidence that the lawyer knows to be false.

(c)  The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding.

(internal denotations omitted).  As I noted in my objection to your initial motion to dismiss, bankruptcy courts that have spoken on the matter recognize the 180-day ban as an extraordinary remedy, reserved for those that repeatedly file in bad faith.  *See* 11 U.S.C. § 109(g); and 11.14.18 Debtor's Objection to UST Motion to Dismiss, at 12-14 (filed on 11.14.18) (*attached*).  (And while we are on the subject, I will note that your office erroneously submitted the initial motion to dismiss a day early, *prior to* the expiration of the 14-day deadline, since (a) the UST Packet is due 14 days following the filing of the petition; (b) Bankruptcy Rule 9006(a) provides that "[w]hen the period is stated in days or a longer unit of time (A) exclude the day of the event that triggers the period"; and (c) the actual deadline thus fell on 10.25.18 and not on the date on which you filed the motion to dismiss, 10.24.18. at 3:19 pm, 41 minutes *before* the bankruptcy clerk's office closed at 4:00pm)

Second, I provided most of what the motion to dismiss represents as missing to my former attorneys, Dan Weintraub and Nina Jirvan, during the several months I was represented by them and, quite rightly, assumed they had passed those documents on to you.  To wit, please find copies of the email in which I included included the following relevant documents and information in emails sent to my former chapter 11 bankruptcy counsel:

- 3.5.19 Email Tax Returns for 2015 2016 and 2017. I have also included my 2018 federal and tax information which I also sent to counsel.  *See* 4.15.19 Email 2018 Federal And State Tax Returns and 2018 Federal & State Tax Returns.
  - Please note that I did not file state income taxes for 2016 as I was an unemployed student throughout 2016, a fact I am almost certain I told you at the §341 meeting, and I only filed 2016 returns to recently to comply with the IRS request as I do so.
- 3.10.19 Email Case Summary, attaching my Certificate of Good Standing to practice law in New York State (attached hereto);
- 3.21.19 Email LACERS Account Balance.  I am in the process of liquidating this account, so your representation that the "General DIP Account had dwindled to… $262.66 on April 1, 2019" is factually misleading, since the DIP Account will increase by $8,387.29 (before taxes and applicable penalties) as soon as the account is liquidated and the proceeds are transferred thereby; and
- 7.23.19 Email from Dan Weintraub Re Remainder of Retainer, demonstrating that Mr. Weintraub is in the process of delivering a portion of my remaining retainer in the amount of $6,531.81 and will subsequently provide the remaining portion of a $3,500 holdback following the application of fees in connection with the preparation and filing of the final fee application.  This inflow of funds, in combination with my LACERS account balance, shows that your representation of "$262.66 on April 1, 2019" is way off the mark and factually misleading.  You would have knew this had you or your office made a single phone call or email to me to inquire.

Third, I created the list of insiders on 11.27.18 and apparently neglected to include it in the mass submission of files I submitted to your office on 11.28.18.  *See* attached "List of Insiders.docx" and Screen Shot of List of Insiders Word Doc Metadata.  At any rate, I am unsure why this is such a sticking point for you, since, as your own motion to dismiss expressly recognizes, you have *actual* knowledge that my mother is the only insider I have

who qualifies as a creditor (I presume your actual knowledge is based on representations I made to you at the §341 as well as various filings with the court that appear on the docket).

Therefore, your assertion that I have "failed to provide timely compliance with Local Bankruptcy Rule 2015-2(b)" is both untrue and rendered moot by this email.

Fourth, on page 3-4 of your motion to dismiss, you make the following representation

> Therefore while the Debtor has repeatedly assured the Court and other interested parties that he is and has been actively seeking employment, as a factual matter, more than 9 months after commencing this case, as best anyone can tell given the Debtor's failure to make and file his required reports, Debtor remains without a viable and continuing source of income to either pay for his on-going living expenses or to fund all or part of any repayment plan[.]

I am unsure why you fail to consider or mention the fact that, in addition to looking for work, I have been engaged in a private attorney general investigation pursuant to 18 U.S.C. §§ 1962 and 1964(a), of which you are fully aware. I will also point out that, following the 5.1.09 hearing, I notified you in front of Nina Jirvan that I was subject to ongoing harassment and retaliation by my former employer, Paul Hastings, and other alleged defendants/co-conspirators. Moreover, **I attempted to show you video evidence of said harassment and you refused to look, turning your head away from my cell phone, even after I reminded you that, as U.S. Trustee, you are a public official and permitted to see such evidence and that it was of particular relevance to you in your role as U.S. Trustee because it involved property of the bankruptcy estate and was/is having the effect of impeding my private attorney general investigation**. To refresh your memory, this occurred right before you and Nina asked to be alone so as to discuss "other matters."

For your information, the particular video I attempted to show you involved a breaking and entering into my private possessions by an alleged co-conspirators that took place at my former residence in February 2019. I can provide this video and more video/audio evidence of the unlawful surveillance and harassment. Furthermore, I am happy to provide a list of the various places I have applied to for work, but again, I have alleged in my court papers that Paul Hastings has intentionally defamed my reputation in the legal profession, so one might understand why it would be difficult to find work under the circumstances I face.

Moreover, you are well aware that I am a "disabled" person under the American with Disabilities Act and California's analogue statute, FEHA, on account of my ADHD. I am unsure why you have not considered the accumulative effect of the ongoing surveillance and harassment has on my innate distractibility, at least as a mitigating factor.

Fifth, on page 3, you marked the box indicating that I have not filed monthly operating reports "Since filing". That is false as I have filed monthly operating reports for months October 2018 through April 2019. I have not filed for months May and June because I have not been able to obtain certain documents to verify the records I have kept. As soon as I am able to obtain these documents, I will promptly file the outstanding monthly operating reports.

Sixth, as far as I am aware, you are totally unaware of the circumstances which gave rise to my bankruptcy attorney and special counsel withdrew. Nor have you made any reasonable inquiry into whether the assertion that "as best anyone can tell given the Debtor's failure to make and file his required reports, Debtor remains without a viable and continuing source of income to either pay for his on-going living expenses or to fund all or part of any repayment

plan.    Again, you have not inquired by email or phone to ask me personally, so I must assume this lazy generalization runs afoul of the duty under Bankruptcy Rule 9011 to form such conclusion "after reasonable inquiry."

So given that I have informed you of the multiple inaccuracies and misleading statements found in your motion to dismiss, I will be compelled to seek sanctions against you and the Los Angeles U.S. Trustee's office for failure to either (i) withdraw the motion and/or (ii) amend the motion making all appropriate and necessary changes in order to come into compliance with Bankruptcy Rule 9011.  *See* Bankruptcy Rule 9011(c).  For my part, I believe it is advisable that you withdraw the motion and wash your hands of it.

Two final notes:

- (1) I have been troubled by your the fixation by your the U.S. Trustee's Los Angeles office that I dismiss my bankruptcy and file my law suit against Paul Hastings and others in California state court.  Both yourself and your colleague, Mr. Ron Maroko, have repeatedly advise that I do so, even though I voiced concern that such a court of action was not in the best interests of the estate of the creditor body.  Mr. Maroko specifically advised I do so following the 11.28.18 hearing in the hallway outside the courtroom in front of my brother-in-law, John Ohanesian.  **Mr. Maroko added that I should "default on my creditors" and doing so wouldn't matter because it was " unlikely" the credit card companies "would sue over a couple thousand dollars."**
- (2) This noted fixation displayed by your office, coupled with certain inappropriate remarks Judge Bluebond has made from the bench suggesting bias, gives me occasion to remind you that Bankruptcy Rule 9003 provides that "[e]xcept as otherwise permitted by applicable law, the United States trustee and assistants to and employees or agents of the United States trustee shall refrain from ex parte meetings and communications with the court concerning matters affecting a particular case or proceeding."

I politely request a prompt response so, if necessary, I may include your responses in my objection and/or motion to impose sanctions.


Sincerely,
Andrew S. Hennigan, Esq.

_____
Andrew S. Hennigan, Esq.
Debtor and Debtor in Possession
Phone: (917) 520-9005
Email: andrewshennigan@gmail.com



3.21.19 Email
LACER...ce.pdf



7.23.19 Email

7.25.19 Email
from D...ner.pdf

**From:** **Andrew Hennigan** andrewshennigan@gmail.com
**Subject:** Tax Returns for 2015, 2016 and 2017
**Date:** March 5, 2019 at 12:24 PM
**To:** Brian Reed Brian@wsrlaw.net

Brian,

See attached the tax returns for years 2015, 2016 and 2017. Please note that, once the 2016 tax return is processed by the IRS, I intend of refiling 2017 to carry forward the qualified education expenses deduction from 2016.

Thank you,
Andrew

      

2015 Tax       2016 Tax       2017 Tax
Return.pdf    Return.pdf    Return.pdf



PDF

3.10.19 Email
Case S...ary.pdf

**From:** **Andrew Hennigan** andrewshennigan@gmail.com
**Subject:** 2018 Federal And State Tax Returns
**Date:** April 15, 2019 at 7:19 PM
**To:** Brian Reed Brian@wsrlaw.net
**Cc:** Nina Javan nina@wsrlaw.net

Brian,

Please see attached my 2018 Federal and State Tax Returns.  Thank you.


Very Best,
Andrew

PDF

2018 Federal &
State T...rns.pdf



2016 Federal
Tax Return.pdf



2017 Federal &
State T...urn.pdf



2018 Federal &
State T...rns.pdf



Evidence of
Earnin...ity.pdf



List of
Insiders.docx





Size: 13.0KB (13,363 bytes)
Created: Tuesday, November 27, 2018 at 7:17 PM
Modified: Tuesday, November 27, 2018 at 7:18 PM
Attributes: Read-only Hidden
Cancel
OK

PDF
11.14.18
Debtor'...al).pdf

 **Gmail**

Andrew Hennigan <andrewshennigan@gmail.com>

## Critical Issues Concerning the Pending UST Motion to Dismiss

**Andrew Hennigan** <andrewshennigan@gmail.com>                                  Wed, Jul 31, 2019 at 6:48 PM
To: kenneth.g.lau@usdoj.gov
Cc: clifford.j.white@usdoj.com, ron.maroko@usdoj.gov, opr.complaints@usdoj.gov, corey.r.amundson@usdoj.com

Mr. Kenneth G. Lau,

You may recall that I emailed you over a week ago concerning certain deficiencies in regard to the motion to dismiss you filed in my chapter 11 bankruptcy. *See In re Andrew Stephen Hennigan*, Case No. 2:18-21885-BB, Dkt. 69 (Bankr. C.D. Cal) (filed on 7.22.19).

In that email, I politely asked that you respond promptly so I could act accordingly. A week has now passed and you have not even provided me the professional courtesy of acknowledging my email, let alone provide me with a substantive response.

Earlier today, I called your office today and left you a message at approximately 11:15 am, which, as you know, has so far gone unreturned.

So, once again, I will politely request that you provide a prompt response so I may act accordingly. This uncertainty has/is causing me serious distress and I would appreciate something of a timely response.


Sincerely,
Andrew S. Hennigan, Esq.

_____
Andrew S. Hennigan, Esq.
Debtor and Debtor in Possession
Phone: (917) 520-9005
Email: andrewshennigan@gmail.com
[Quoted text hidden]

Gmail - Evidence of DIP Account Deposit and NYS Certificate of Good Standing                                                8/2/19, 10:51 AM

 **Gmail**

Andrew Hennigan <andrewshennigan@gmail.com>

---

## Evidence of DIP Account Deposit and NYS Certificate of Good Standing

---

**Andrew Hennigan** <andrewshennigan@gmail.com>                                        Sat, Jul 27, 2019 at 4:09 PM
To: kenneth.g.lau@usdoj.gov
Cc: clifford.j.white@usdoj.com, opr.complaints@usdoj.gov, corey.r.amundson@usdoj.com, ron.maroko@usdoj.gov

Mr. Kenneth G. Lau,

Please see attached (i) 7.24.19 Partial Retainer Check from former bankruptcy counsel Weintraub & Selth, P.C.; and (ii) 7.27.19 DIP Account Deposit Receipt.

This new information, combined with the information and various documents I provided in the 7.23.19 email sent to you, further renders substantial portions of the U.S. Trustee 7.22.19 Motion to Dismiss, Dkt. 69, and the attached Declaration of Bankruptcy Auditor Jack Arutyunyan thereto, untrue and materially misleading. Accordingly, both the motion to dismiss and the attached declaration require amendment or withdrawal to avoid violating Bankruptcy Rule 9011's continuing duty "to review, reevaluate pleadings and modify them when it is appropriate." *See* Bankruptcy Rule 9011; *Timmons v. Cassell* (*In re Cassell*), 254 B.R. 687, 691 (6th Cir. B.A.P. 2000) ("Rule 9011 also imposes a continuing responsibility to review and reevaluate pleadings and modify them when it is appropriate") (*attached*); *In re Shelton*, 428 B.R. 457, 460 (Bankr. N.D. Ohio 2010) (same) (*attached*); and *In re Reuscher*, No. 97-2010, 1998 U.S. App. LEXIS 3897, at *4-5 (7th Cir. 1998) (affirming bankruptcy court) (

> As the bankruptcy court noted, however, even if their perception of the law and facts at the time they filed the complaint was reasonable. they "violated Rule 11 in continuing to advocate the allegations of the complaint at trial even while producing no evidence to support the allegations." Fed. R. Civ. P. 11(b) (1992) (a party can not only be sanctioned for filing a complaint, but also for "later advocating" the assertions made in that pleading). Appellants' action was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or the establishment of new law. Fed. R. Bankr. P. 9011(a) (1996); see Fed R. Civ. P 11(b)(2) (1992).

) (certain internal citation omitted) (*attached*).

Please also note that I have attached the New York State Certificate of Good Standing as a stand alone pdf, even though it was previously included in the 7.23.19 email as part of the Earning Capacity pdf.

I will again politely request that you respond in a timely manner so I may include the U.S. Trustee's response in my forthcoming objection and/or motion to impose sanctions. I will note that that the U.S. Trustee's office has so far failed to respond to the 7.23.19 email sent to you, among others.


Sincerely,
Andrew S. Hennigan, Esq.

---
Andrew S. Hennigan, Esq.

Debtor and Debtor in Possession
Phone: (917) 520-9005
Email: andrewshennigan@gmail.com

---

**6 attachments**

📄 **In re Cassell_ 254 B.R. 687.PDF**
148K

📄 **In re Shelton_ 428 B.R. 457.PDF**
173K

📄 **NYS Certifcate of Good Standing.pdf**
306K

📄 **7.24.19 Partial Retainer Check.pdf**
2626K

📄 **7.27.19 DIP Account Deposit Receipt.pdf**
2259K

📄 **In re Reuscher_ 1998 U.S. App. LEXIS 3897.PDF**
109K

 **Gmail**

Andrew Hennigan <andrewshennigan@gmail.com>

---

## Concerning the Withdrawal of Weintraub & Selth, P.C.

---

**Andrew Hennigan** <andrewshennigan@gmail.com>                    Sun, Jul 28, 2019 at 2:27 PM
To: kenneth.g.lau@usdoj.gov
Cc: "Arutyunyan, Jack (USTP)" <Jack.Arutyunyan@usdoj.gov>, clifford.j.white@usdoj.com, opr.complaints@usdoj.gov,
corey.r.amundson@usdoj.com, "Giel, Dawn (NBCUniversal)" <dawn.giel@nbcuni.com>, "Picker, Leslie (NBCUniversal)"
<leslie.picker@nbcuni.com>, "Kolodny, Lora (NBCUniversal)" <lora.kolodny@nbcuni.com>

Mr. Kenneth G. Lau,

Please see attached the email exchange that occurred on 5.14.19 and 5.17.19 between myself, as Debtor in
Possession, and the chapter 11 estate's former bankruptcy counsel Dan Weintraub of Weintraub & Selth, P.C.  Please
also see *below* the signature bar certain extracts from the email exchange.

As is readily apparent in the email exchange, Mr. Weintraub decided to withdraw as bankruptcy counsel -- unilaterally
-- after I had accused him of acting unethically, including, but not limited to, when he alluded to a <u>private discussion</u>
concerning my case between himself and Judge Bluebond at our 5.13.19 meeting.

As reflected in the email trail, Mr. Weintraub denied having made that comment.  However, former special counsel
Blake Lindemann, who (i) was the the 5.13.19 meeting, (ii) was CC'd on the email exchange, and (iii) regularly works
with Mr. Weintraub, did not object to my claim that Mr. Weintraub stated at the 5.13.19 meeting that Judge Bluebond
made negative comments about my case during a <u>private discussion</u>. (Significantly, Mr. Weintraub never personally
represented the chapter 11 estate at any hearing in front of Judge Bluebond.)

In light of these facts, I believe the implication that somehow the Debtor in Possession was responsible for the
withdrawal of former bankruptcy counsel Weintraub and Selth, P.C., in the 7.22.19 *U.S. Trustee's Motion to Dismiss
the Chapter 11 Estate's Bankruptcy Case and Impose an 180-ban on Filing* is materially false and misleading.

Moreover, I believe the U.S. Trustee's Office should (and likely obligated to) investigate the allegations found in the
attached email exchange, consistent with its duty to protect the integrity of the bankruptcy system.


Sincerely,
Andrew S. Hennigan, Esq.

_____

Andrew S. Hennigan, Esq.
Debtor and Debtor in Possession
Phone: (917) 520-9005
Email: andrewshennigan@gmail.com


> On May 14, 2019, at 1:51 PM, Andrew Hennigan <andrewshennigan@gmail.com> wrote:
>
> Dan,
> I am happy to provide you with that analysis.  You can expect it in the next few days.
>
> In the interim, it would be helpful if you were to review the materials I have already sent you.  It was clear at
> yesterday's meeting that you had not familiarized yourself with most of the materials which I have already forwarded
> to you, in some instances, a couple of months ago.  You were also unprepared for the meeting which <u>you</u> called, as
> there was no agenda/itenera provided in advance, despite the fact that you seemed focused on the issue of

whether we file in state or federal court. As a result, I was unprepared to respond to your questions and I found the meeting entirely unproductive. In the future, let's make sure we iron out these details before hand.

Also, yesterday you said that I needed to convince *you* that we should be in federal court instead of state court. Let me be clear: I am the debtor in possession, I am the client, you are my bankruptcy attorney. The decision to go to federal or state court is in the peculiar province of the client. So let's respect our respective roles and duties here.

---

**From:** Andrew Hennigan [mailto:andrewshennigan@gmail.com]
**Sent:** Tuesday, May 14, 2019 2:00 PM
**To:** Daniel J. Weintraub <dan@wsrlaw.net>
**Cc:** Blake J Lindemann <blake@lawbl.com>; Nina Javan <nina@wsrlaw.net>
**Subject:** Re: Evidence and Background Info

In addition, I will remind you that yesterday you called me "irrational" multiple times, which was the second occasion in which you have described me as such (the first time was on a previous phone call). If you call me irrational one more time — without having provided me with any legal analysis justifying such a slander — then I will fire you. Your choice of language is completely out of line and unacceptable.

Sincerely,
Andrew

---

On May 14, 2019, at 3:01 PM, Andrew Hennigan <andrewshennigan@gmail.com> wrote:

Dan,

Clearly a breakdown? I disagree. Please review California Rules 1.16 and 1.3 of Professional Conduct provided *below*. I do not believe you are ethically capable of terminating our relationship based on the facts and the grounds you have asserted.

Again, if you attempt to withdrawal unilaterally — against my express wishes — I will object (at a minimum).

Sincerely,
Andrew

---

**From:** Andrew Hennigan [mailto:andrewshennigan@gmail.com]
**Sent:** Tuesday, May 14, 2019 9:39 PM
**To:** Daniel J. Weintraub <dan@wsrlaw.net>
**Cc:** Blake J Lindemann <blake@lawbl.com>; Nina Javan <nina@wsrlaw.net>
**Subject:** Re: Evidence and Background Info

You said, in sum and substance, "*she might think you're irrational. You're arguments are crazy, she actually told me that.*" The italicized parts are verbatim.

Interesting Blake didn't challenge me on that claim when I spoke on the phone with him earlier.

---

On May 14, 2019, at 9:32 PM, Daniel J. Weintraub <dan@wsrlaw.net> wrote:

I never said any such thing and have never spoken with Judge Bluebond about you or your case
Sent from my iPhone

On May 14, 2019, at 4:10 PM, Andrew Hennigan <andrewshennigan@gmail.com> wrote:

And, for the record, I believe it was unethical when you informed me at the meeting that Judge Bluebond had made negative comments about my case to you *in private*.

Nevertheless, I look forward to working with you in a professional manner.


All The Best,
Andrew

---

📄 **Email Exchange With Dan Weintraub.pdf**
173K

Gmail - Evidence and Background Info

7/28/19, 2:10 PM

 **Gmail**

Andrew Hennigan <andrewshennigan@gmail.com>

---

## Evidence and Background Info

**Daniel J. Weintraub** <dan@wsrlaw.net>
To: Andrew Hennigan <andrewshennigan@gmail.com>
Cc: Nina Javan <nina@wsrlaw.net>, Jim Selth <jim@wsrlaw.net>, Blake Lindemann <blake@lawbl.com>

Fri, May 17, 2019 at 12:36 PM

OK no call.


Daniel J. Weintraub

Weintraub & Selth, APC

11766 Wilshire Boulevard, Suite 1170

Los Angeles, CA  90025

(310) 207-1494

(310) 442-0660 Fax

dan@wsrlaw.net

www.wsbankruptcylaw.com




NOTICE TO RECIPIENT:  THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION AND THIS COMMUNICATION IS INTENDED TO BE
PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN-E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM.  THANK YOU IN
ADVANCE FOR YOUR COOPERATION.

---

**From:** Andrew Hennigan <andrewshennigan@gmail.com>
**Date:** Friday, May 17, 2019 at 12:36 PM
**To:** Daniel Weintraub <dan@wsrlaw.net>
**Cc:** Nina Javan <nina@wsrlaw.net>, Jim Selth <jim@wsrlaw.net>, Blake Lindemann <blake@lawbl.com>
**Subject:** Re: Evidence and Background Info


Will you have anything to add to your previous reasons?  If not, I don't think a phone call will be productive.  I don't agree to a transition, at this critical juncture,
for the reasons you have stated.  I refuse.  If you are still adamant about withdrawing, I request that you, consistent with the best interests of the the
bankruptcy estate and its creditor body, push back the date in which you file such a motion as far into the future as you are willing.  It is absolutely not in the
best interest for you to file such a motion before the lawsuit is filed.


    On May 17, 2019, at 12:28 PM, Daniel J. Weintraub <dan@wsrlaw.net> wrote:


    But only to speak about transition issues for all of the reasons I have previously stated


    Daniel J. Weintraub

    Weintraub & Selth, APC

11766 Wilshire Boulevard, Suite 1170

Los Angeles, CA  90025

(310) 207-1494

(310) 442-0660 Fax

dan@wsrlaw.net

www.wsbankruptcylaw.com


<image001.png>


NOTICE TO RECIPIENT:  THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION AND THIS COMMUNICATION IS INTENDED TO
BE PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS
STRICTLY PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN-E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM.  THANK YOU IN ADVANCE FOR YOUR COOPERATION.

---

**From:** Andrew Hennigan <andrewshennigan@gmail.com>
**Date:** Friday, May 17, 2019 at 11:58 AM
**To:** Daniel Weintraub <dan@wsrlaw.net>
**Cc:** Nina Javan <nina@wsrlaw.net>, Jim Selth <jim@wsrlaw.net>, Blake Lindemann <blake@lawbl.com>
**Subject:** Re: Evidence and Background Info


By the way, I am unavailable to speak until Thursday of next week, as I am preparing for a Wednesday interview with Wall Street Journal
reporters at their LA office.  Does Thursday work for you?



On May 17, 2019, at 9:57 AM, Daniel J. Weintraub <dan@wsrlaw.net> wrote:


Andrew


I decided to let a day pass before responding.


Your email below is false.  I have not spoken with Judge Bluebond ever about your case and if I had, I would never say anything to
the judge or any third party outside the privilege which might be seen as undermining your goal or position, even if I disagree with
your position as strongly as I do now.


I did say that if you didn't get a job or didn't move your case along, I was very concerned the court would lose patience with your
case and would convert to chapter 7 or appoint a chapter 11 trustee.


I also said that I believe your valuing your claim against Paul Hastings at 1 billion dollars is not supportable and diminishes
credibility both in you and in your claim.  You will recall that I told you this the first time we met.  In our first meeting I asked you for
the rationale for your valuation and you pointed to one of the top litigators in the firm who you said made 10 million dollars per
year.  You used him as a bench mark for your future earnings claim.  I told you then and I will tell you again now that I believe this
is unreasonable, irrelevant and I disagree 1000% with your analysis and reasoning.  I also continue to believe that your
persistence in this and related positions in the litigation undermines your claim and credibility.  Simply put, I don't think anyone will
take you seriously.


When Blake asked you what you were looking to get out of the litigation, you stated you could not answer.  When he asked why,
you dodged his question.  He threw a series of increasing numbers at you, which I believe went up to 1 million dollars and you
could not or would not commit.

As I have stated, you are proceeding in a course which I do not believe in and do not believe I can advance or advocate for.  I do not believe your case belongs in chapter 11 as there is no legitimate bankruptcy purpose being served.  I believe you should move to dismiss.  I told you this the first time we met and stated that I believed you had filed the case precipitously.  You asked me to take over your matter which I agreed to do on your representation that you would re-evaluate the filing and consider the advice I provided.  I believed you would come around.  But you have not done so and can provide no additional reasoning for the case to remain on file.  As we both know from the Monday meeting, Blake also does not believe your chapter 11 case should remain on file and believes the bankruptcy case may hurt your litigation claims.  Blake and I both implored you to dismiss the bankruptcy case, but you appear to be steadfast in your desire to remain in chapter 11.  I believe you are taking positions that have little to no merit.  This creates a conflict between us.

Following the meeting you wrote a series of email.  In one you told me I was unprepared for the meeting I called, which is false.  Your second email then escalated your attack by telling me that if I ever called you irrational you would fire me and that my choice of language was out of line and unacceptable.  This is not how I conduct myself with my clients.  If I believe they are taking an irrational position or acting irrationally, I will say so.  Then you accused me of acting unethically, which is unsupportable and with which I disagree (personally I think it would be unethical for me to not provide you with my honest observations and analysis-be they pleasant or not).  You then made another threat "Again, if you attempt to withdrawal unilaterally — against my express wishes — I will object (at a minimum)".  You then sent your back peddling email and tried to patch things up which was followed by the email about Judge Bluebond.  Your insulting and threatening email storm all began after I wrote you a follow up email to our meeting which stated simply

"Please provide your analysis as to how and why your memo was a "smoking gun" containing "controlling authority" which was not disclosed in order to allow a reduced settlement with a friendly/collusive party and had it been disclosed would have been devastating to McKinsey."

You know I question both your bankruptcy case and some of the theories and evidence you have pointed to so perhaps this is why you reacted to my simple email with such vigor and venom.

In any event, I don't believe we had a "kerfuffle" nor that it is "water under the bridge".  We clearly have a conflict and the relationship has been broken and is beyond repair.  I appreciate your kind words about the services we have provided to date.  I take what we do for our clients seriously and am passionate about their achieving great outcomes.  I wish the same for you.  But we cannot work together any longer.

Let's find a win for you in this circumstance.  While you can oppose our motion to withdraw (as to which we have ample grounds), this will force me to disclose the email you have written to me and me to you and I do not believe a "noisy withdrawal" is in your best interest.  If you want to remain in chapter 11, there are several fine attorneys in LA who can help you.  If you want to dismiss, we can ask that it be without prejudice to your refiling and I am reasonably confident it would be granted on those terms.

Let's get on a call tomorrow of Monday to discuss.

Dan

Daniel J. Weintraub

Weintraub & Selth, APC

11766 Wilshire Boulevard, Suite 1170

Los Angeles, CA 90025

(310) 207-1494

(310) 442-0660 Fax

dan@wsrlaw.net

www.wsbankruptcylaw.com

NOTICE TO RECIPIENT:  THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION AND THIS COMMUNICATION IS INTENDED TO BE PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN-E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM.  THANK YOU IN ADVANCE FOR YOUR COOPERATION.

**From:** Andrew Hennigan [mailto:andrewshennigan@gmail.com]
**Sent:** Tuesday, May 14, 2019 9:39 PM
**To:** Daniel J. Weintraub <dan@wsrlaw.net>
**Cc:** Blake J Lindemann <blake@lawbl.com>; Nina Javan <nina@wsrlaw.net>
**Subject:** Re: Evidence and Background Info

You said, in sum and substance, "*she might think you're irrational. You're arguments are crazy, she actually told me that.*"  The italicized parts are verbatim.

Interesting Blake didn't challenge me on that claim when I spoke on the phone with him earlier.

> On May 14, 2019, at 9:32 PM, Daniel J. Weintraub <dan@wsrlaw.net> wrote:
>
> I never said any such thing and have never spoken with Judge Bluebond about you or your case
>
> Sent from my iPhone
>
> On May 14, 2019, at 4:10 PM, Andrew Hennigan <andrewshennigan@gmail.com> wrote:
>
>> And, for the record, I believe it was unethical when you informed me at the meeting that Judge Bluebond had made negative comments about my case to you *in private*.
>>
>> Nevertheless, I look forward to working with you in a professional manner.
>>
>>
>> All The Best,
>>
>> Andrew
>>
>>
>>> On May 14, 2019, at 3:01 PM, Andrew Hennigan <andrewshennigan@gmail.com> wrote:
>>>
>>> Dan,
>>>
>>> Clearly a breakdown?  I disagree.  Please review California Rules 1.16 and 1.3 of Professional Conduct provided *below*.  I do not believe you are ethically capable of terminating our relationship based on the facts and the grounds you have asserted.

Again, if you attempt to withdrawal unilaterally — against my express wishes — I will object (at a minimum).

Sincerely,

Andrew

Rule 1.16 Declining or Terminating Representation
(Rule Approved by the Supreme Court, Effective November 1, 2018)

1. (b)  Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

    1. **(1)  the client insists upon presenting a claim or defense in litigation, or asserting a position or making a demand in a non-litigation matter, that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law;**
    2. (2)  the client either seeks to pursue a criminal or fraudulent* course of conduct or has used the lawyer's services to advance a course of *conduct that the lawyer reasonably believes* was a crime or fraud;*
    3. (3)  the client insists that the lawyer pursue a course of conduct that is criminal or fraudulent;*
    4. (4)  the client by other conduct renders it unreasonably difficult for the lawyer to carry out the representation effectively;
    5. (5)  the client breaches a material term of an agreement with, or obligation, to the lawyer relating to the representation, and the lawyer has given the client a reasonable* warning after the breach that the lawyer will withdraw unless the client fulfills the agreement or performs the obligation;
    6. (6)  the client knowingly* and freely assents to termination of the representation;
    7. (7)  the inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal;
    8. (8)  the lawyer's mental or physical condition renders it difficult for the lawyer to carry out the representation effectively;
    9. (9)  a continuation of the representation is likely to result in a violation of these rules or the State Bar Act; or
    10. (10)  the lawyer believes* in good faith, in a proceeding pending before a tribunal,* that the tribunal* will find the existence of other good cause for withdrawal.

Rule 1.3 Diligence
(Rule Approved by the Supreme Court, Effective November 1, 2018)

1. (a)  A lawyer shall not intentionally, repeatedly, recklessly or with gross negligence fail to act with reasonable diligence in representing a client.
2. (b)  For purposes of this rule, "reasonable diligence" shall mean that a lawyer acts with commitment and dedication to the interests of the client and does not neglect or disregard, or unduly delay a legal matter entrusted to the lawyer.

On May 14, 2019, at 2:43 PM, Daniel J. Weintraub <dan@wsrlaw.net> wrote:


BELOW


Daniel J. Weintraub

Weintraub & Selth,  APC

11766 Wilshire Boulevard, Suite 1170

Los Angeles, CA  90025

(310) 207-1494

(310) 442-0660 Fax

dan@wsrlaw.net

www.wsbankruptcylaw.com


<image001.png>

NOTICE TO RECIPIENT:  THIS E-MAIL IS MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION AND THIS
COMMUNICATION IS INTENDED TO BE PRIVILEGED BY LAW.  IF YOU
RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE,
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS
STRICTLY PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE
ERROR BY RETURN-E-MAIL AND PLEASE DELETE THIS MESSAGE
FROM YOUR SYSTEM.  THANK YOU IN ADVANCE FOR YOUR
COOPERATION.


**From:** Andrew Hennigan [mailto:andrewshennigan@gmail.com]
**Sent:** Tuesday, May 14, 2019 2:39 PM
**To:** Daniel J. Weintraub <dan@wsrlaw.net>
**Cc:** Blake J Lindemann <blake@lawbl.com>; Nina Javan
<nina@wsrlaw.net>
**Subject:** Re: Evidence and Background Info


Dan,


Actually you said I was being irrational. Take ownership of your words.  But
even accepting as true that you were calling my theories irrational, how
can you call my theories of the case "irrational" if you have failed to even
review the legal analysis I already provided you with?  BECAUSE I HAVE
32 YEARS OF EXPERIENCE IN BANKRUPTCY AND LITIGATION.  AS I
MENTIONED, IT IS NOT MY ROLE TO ANALYZE ALL OF YOUR
EVIDENCE AS WE ARE NOT YOUR LITIGATION COUNSEL


Moreover, I don't know how you can call a theory irrational if you fail to
abreast yourself of available facts for consideration. Personally, I think it's
irrational to form a conclusion when you know you aren't familiar with all
the facts.  I mean, there is an ethical rule about that.  FAIR ENOUGH.  WE
ARE PARTING SO YOU CAN WORK WITH SOMEONE WHO YOU FIND
MORE APPROPRIATE OR AGREEABLE


And maybe you glossed over it, but my language about firing you was
conditional.  Unless you intend on calling me irrational again without

considering the all the facts and without performing any legal research, then I don't intend on firing you. I THINK WE'RE PAST THAT. TO HARD TO PUT THE GEENIE BACK IN THE BOTTLE

Please explain to me why you intend on resigning. BECAUSE THERE HAS CLEARLY BEEN A BREAKDOWN IN THE ATTORNEY CLIENT RELATIONSHIP. This is rather unanticipated, since this is the first time you are mentioning such a move. I WILL WORK WITH YOU ON TIMING. Is it because I intend on filing a lawsuit that is based on Jay Alix's complaint in the SDNY? NO, SEE PRIOR ANSWER That seems grossly insufficient to withdraw considering you knew the nature of my claims when you accepted my case. SAME

I think you should reconsider, Dan.

> On May 14, 2019, at 2:25 PM, Daniel J. Weintraub <dan@wsrlaw.net> wrote:

> That's not a problem at all. I can't remember at the moment the exact context of my comments but it was not personal and referring to comments about and theories of the case. I always call things as I see them and am passionate about advancing our client's best interest. I certainly didn't mean you any personal offense or insult.

> The email below suggests to me that perhaps you would be better off working with other counsel. We will of course fully cooperate in the transition.

> I suggest we speak later this week (I am tied up today and tomorrow). If we can't get past this, we intend to resign. Perhaps you can substitute back in pro per until you find new counsel.

> Do you have time for a call Friday morning?

> Daniel J. Weintraub

> Weintraub & Selth, APC

> 11766 Wilshire Boulevard, Suite 1170

> Los Angeles, CA 90025

> (310) 207-1494

> (310) 442-0660 Fax

> dan@wsrlaw.net

> www.wsbankruptcylaw.com

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR
ONLY THE INTENDED RECIPIENT OF THE
TRANSMISSION AND THIS COMMUNICATION IS
INTENDED TO BE PRIVILEGED BY LAW. IF YOU
RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE,
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS
E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US
IMMEDIATELY OF THE ERROR BY RETURN-E-MAIL AND
PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR
COOPERATION.

---

**From:** Andrew Hennigan [mailto:andrewshennigan@gmail.com]
**Sent:** Tuesday, May 14, 2019 2:00 PM
**To:** Daniel J. Weintraub <dan@wsrlaw.net>
**Cc:** Blake J Lindemann <blake@lawbl.com>; Nina Javan <nina@wsrlaw.net>
**Subject:** Re: Evidence and Background Info

In addition, I will remind you that yesterday you called me "irrational" multiple times, which was the second occasion in which you have described me as such (the first time was on a previous phone call). If you call me irrational one more time — without having provided me with any legal analysis justifying such a slander — then I will fire you. Your choice of language is completely out of line and unacceptable.

Sincerely,

Andrew

On May 14, 2019, at 1:51 PM, Andrew Hennigan <andrewshennigan@gmail.com> wrote:

Dan,

I am happy to provide you with that analysis. You can expect it in the next few days.

In the interim, it would be helpful if you were to review the materials I have already sent you. It was clear at yesterday's meeting that you had not familiarized yourself with most of the materials which I have already forwarded to you, in some instances, a couple of months ago. You were also unprepared for the meeting which you called, as there was no agenda/itenera provided in advance, despite the fact that you seemed focused on the issue of whether we file in state or federal court. As a result, I was unprepared to respond to your questions and I found the meeting entirely

unproductive.  In the future, let's make sure we
iron out these details before hand.

Also, yesterday you said that I needed to
convince *you* that we should be in federal
court instead of state court.  Let me be clear; I
am the debtor in possession, I am the client,
you are my bankruptcy attorney.  The decision
to go to federal or state court is in the peculiar
province of the client.  So let's respect our
respective roles and duties here.  Thank you.

Very Best,

Andrew

On May 14, 2019, at 12:11 PM,
Daniel J. Weintraub
<dan@wsrlaw.net> wrote:

Please provide your analysis as
to how and why your memo was
a "smoking gun" containing
"controlling authority" which was
not disclosed in order to allow a
reduced settlement with a
friendly/collusive party and had it
been disclosed would have been
devastating to McKinsey

Daniel J. Weintraub

Weintraub & Selth,  APC

11766 Wilshire Boulevard, Suite
1170

Los Angeles, CA  90025

(310) 207-1494

(310) 442-0660 Fax

dan@wsrlaw.net

www.wsbankruptcylaw.com

<image001.png>

NOTICE TO RECIPIENT:  THIS
E-MAIL IS MEANT FOR ONLY
THE INTENDED RECIPIENT OF
THE TRANSMISSION AND
THIS COMMUNICATION IS
INTENDED TO BE PRIVILEGED
BY LAW.  IF YOU RECEIVED
THIS E-MAIL IN ERROR, ANY
REVIEW, USE,

DISSEMINATION,
DISTRIBUTION, OR COPYING
OF THIS E-MAIL IS STRICTLY
PROHIBITED. PLEASE NOTIFY
US IMMEDIATELY OF THE
ERROR BY RETURN-E-MAIL
AND PLEASE DELETE THIS
MESSAGE FROM YOUR
SYSTEM. THANK YOU IN
ADVANCE FOR YOUR
COOPERATION.

---

**From:** Andrew Hennigan
[mailto:andrewshennigan@gmail.
com]
**Sent:** Monday, May 13, 2019
10:15 PM
**To:** Daniel J. Weintraub
<dan@wsrlaw.net>; Blake J
Lindemann <blake@lawbl.com>
**Cc:** Nina Javan
<nina@wsrlaw.net>
**Subject:** Evidence and
Background Info

All,

Please see attached the
following
evidence/research/diagrams:

- (i) Sidley Austin Opinion
  letter;
- (ii) 6.27.18 Shlomo Emails
- (iii) Final 8.16.18 Meeting
  Transcript;
- (iv) Memo 4.1.18 (the
  "Constitutional Debt Limit
  Memo");
- (v) 4.6.18 Database
  (which centralized
  desperate data from
  Puerto Rico financial
  reports),
- (vi) Collateral Calls
  Comparison,
- (vii) Zwillinger Emails
  (sent by senior litigation
  associate who said
  omitting controlling
  authority was "Bliss' call.")
- (viii) the linkedIn profile for
  Casey Lipscomb (general
  counsel for MIO and
  McKinsey & Co.),
- (ix) retired Bankruptcy
  Judge Rhodes' Letter to
  the court in Westmoreland
  Coal Company)
- (x) Alix v. McKinsey SDNY
  Complaint;
- (xi) Alix Complaint Exhibit
  73-1;
- (xii) Alix Complaint Exhibit
  73-2;
- (xiii) Hub & Spoke

7/28/19, 2:10 PM

Conspiracy Diagram

- (xiv) MIO Board and Entities;
- (xv) Pay-to-Play Scheme;
- **(xvi) 12.7.17 Email Concerning McKinsey USG**;
- (xvii) MIO and McKinsey General Counsel Case Lipscomb LinkedIn Profile;
- (xviii) The Investigative Report Concerning McKinsey/MIO In Puerto Rico;

Please also see attached the following articles providing background:

- (1) Harriet Agnew, et al., *Inside McKinsey's private hedge fund: McKinsey quietly runs an investment arm for partners but experts warn of conflicts of interest*, Financial Times (June 5, 2016);

- (2) Walsh, Mary Williams, *Transparency of Puerto Rico Bankruptcy Is the Aim of a New Bill*, NY Times (Dec. 19, 2018);

- (3) Walsh, Mary Williams, *McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome.*, NY Times (Sept. 26, 2018);

- (4) Michael Forsythe, et al., *As McKinsey Sells Advice, Its Hedge Fund May Have a Stake in the Outcome*, NY Times (Feb. 19. 2019);

- (5) Walsh, Mary Williams, *One Man vs. McKinsey: A Billionaire Says the Consultancy Has Rigged the Bankruptcy System*, NY Times (April 11, 2019).

I would also appreciate it if,
sooner rather than later, we
could make an effort to listen to
the 8.16.18 meeting audio (which
I provided a link to in a previous
email) since it is a central piece
of evidence for us.

Thank you,

Andrew

Gmail - Critical Issues Concerning the Pending UST Motion to Dismiss

 Gmail

Andrew Hennigan <andrewshennigan@gmail.com>

## Critical Issues Concerning the Pending UST Motion to Dismiss

**Andrew Hennigan** <andrewshennigan@gmail.com>                       Wed, Jul 31, 2019 at 6:48 PM
To: kenneth.g.lau@usdoj.gov
Cc: clifford.j.white@usdoj.com, ron.maroko@usdoj.gov, opr.complaints@usdoj.gov, corey.r.amundson@usdoj.com

Mr. Kenneth G. Lau,

You may recall that I emailed you over a week ago concerning certain deficiencies in regard to the motion to dismiss you filed in my chapter 11 bankruptcy.  *See In re Andrew Stephen Hennigan*, Case No. 2:18-21885-BB, Dkt. 69 (Bankr. C.D. Cal) (filed on 7.22.19).

In that email, I politely asked that you respond promptly so I could act accordingly.  A week has now passed and you have not even provided me the professional courtesy of acknowledging my email, let alone provide me with a substantive response.

Earlier today, I called your office today and left you a message at approximately 11:15 am, which, as you know, has so far gone unreturned.

So, once again, I will politely request that you provide a prompt response so I may act accordingly.  This uncertainty has/is causing me serious distress and I would appreciate something of a timely response.


Sincerely,
Andrew S. Hennigan, Esq.

_____
Andrew S. Hennigan, Esq.
Debtor and Debtor in Possession
Phone: (917) 520-9005
Email: andrewshennigan@gmail.com
[Quoted text hidden]